UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-350-H

ALYSON GOODWIN                                                          PLAINTIFF

v.

NOVARTIS PHARMACEUTICALS
CORPORATION,                                                           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Alyson Goodwin, filed this lawsuit alleging federal and state statutory and

common law claims against her former employer, Novartis Pharmaceutical Corp. ("Novartis" or

"Defendant").  The Complaint alleges Novartis unlawfully retaliated against Goodwin after she

internally reported allegedly illegal activity, culminating in a resignation Goodwin contends was

a constructive discharge.  Defendant filed a Rule 12(b)(6) motion to dismiss each of the five

counts alleged in the Complaint.  Having assessed the Complaint and the parties' memoranda,

the Court will sustain the motion in part and deny it in part.

I.

Goodwin worked for Novartis in the 1990s and returned to the company in 2006 as a

Senior Sales Consultant.  In September 2008, Goodwin received an e-mail message from Kyle

Sanderson requesting that attendees of an upcoming training session bring with them a medical

study, referred to as the "AVOID Trial," concerning a Novartis drug product, Tekturna.  During

the September 18th training, Sanderson compared the AVOID Trial with a study of another drug.

Both studies concerned nephropathy and type 2 diabetes.  Sanderson also explained how data

provided by a Novartis-paid physician could improve sales presentations and instructed the

1

trainees on "how to ensure that they received prior authorization for Tekturna when dealing with Humana Medicare."  Compl. 5.

Goodwin expressed her concerns to her immediate supervisor that the methods Sanderson was presenting, particularly as to Tekturna and Humana Medicare, could lead to ethical and legal violations, specifically violations of the False Claims Act ("FCA").  The supervisor dismissed her concerns, stating that the training was "a learning experience for our information only." *Id.* And, according to the Complaint, the supervisor began promoting use of Sanderson's marketing tactics.  Consequently, on September 22nd, Goodwin called a Novartis internal compliance hotline to report what happened at the training.  When that report did not receive much response, on January 7, 2009, Goodwin spoke directly with the Executive Director of Ethics and Compliance.  That conversation triggered further investigation into the September 18th training.

On February 2, 2009, Goodwin spoke to a member of Novartis' corporate security team, who asked for the names of other attendees of the training and a copy of the instructions Goodwin received at the September 18th training.  A month later, Goodwin was told that the corporate security team would interview attendees of the training.  On March 12, 2009, Goodwin received a voicemail message stating that the corporate security officer would need to meet with her as well.  At that meeting, Goodwin learned that her immediate supervisor claimed Goodwin's report regarding the training was an attempt to retaliate against the supervisor.  The corporate security officer told Goodwin the team would finish its report by March 20, 2009 and that she should expect to hear from the company in the following week as to its determinations. Goodwin received no notice of such determinations through mid-April 2009.

A corporate security officer again contacted Goodwin at the end of April.  Goodwin

2

returned the call on May 11th and reiterated that "the information and sales techniques urged by others at the training session were illegal and put Novartis" at risk under, among other things, the FCA.  Goodwin memorialized this conversation in an e-mail message sent to the corporate security team on May 12th.  That same day, Goodwin's legal counsel sent a letter to Defendant complaining about retaliation she was experiencing after reporting the September 18th training.

Retaliation Goodwin experienced included: (1) disclosure of her involvement in the investigation to other employees in violation of internal policies; (2) being avoided by Novartis employees who knew she reported the September 18th training; (3) placement under a new supervisor, Ellet McDonald, who was a close social and work acquaintance of Goodwin's former supervisor; (4) McDonald's refusal to provide managerial support to Goodwin on similar terms as other employees; (5) McDonald's using Goodwin's work without giving her credit; (6) McDonald's instructing employees not to communicate on company cellular phones using text messages, insinuating that Goodwin might use those messages to report employees to the compliance division; and (7) receiving two unsigned letters at her home address that were harassing, demanded she quit her job, and indicated the senders were Novartis employees.

Given notice of the letters and other forms of retaliation, Novartis did not investigate Goodwin's allegations of retaliation.  Goodwin's working conditions had become intolerable to her and she notified Novartis on October 2, 2009 of her resignation, citing the hostility and retaliation she had suffered and her disappointment in Novartis' failure to adequately investigate and remedy the violations of federal law she reported.

3

II.

The Court must decide whether, accepting as true all factual allegations from the

Complaint, Plaintiff has stated a claim as to each cause of action that is plausible on its face.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Mere legal conclusions are insufficient to

state a claim.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Although the Court construes the

material allegations of the Complaint in a light favorable to Plaintiff, it will not consider

unwarranted factual inferences.  *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d

1046, 1050 (6th Cir. 2011) (citing *Twombly*, 550 U.S. at 569-70).

III.

Plaintiff's first cause of action is for retaliation under the False Claims Act, 31 U.S.C. §

3730(h) (2010).[1]  To bring an FCA retaliation claim one must establish: "(1) he engaged in a

protected activity; (2) his employer knew that he engaged in the protected activity; and (3) his

employer discharged or otherwise discriminated against the employee as a result of the protected

activity."  *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (citing *McKenzie v.

BellSouth Telecomms., Inc.*, 219 F.3d 508, 513-14 (6th Cir. 2000) (*McKenzie II*[2])).  Defendant

---

[1] The Complaint cites 18 U.S.C. § 1031, a criminal fraud statute, but the rest of the Complaint and
Plaintiff's brief opposing Defendant's motion to dismiss make clear that she is proceeding under the False
Claims Act, 31 U.S.C. § 3730(h), which provides: "Any employee, contractor, or agent shall be entitled to all relief
necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged,
demoted, suspended,
threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment
because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under
this section or other efforts to stop 1 or more violations of this subchapter."

[2] A case involving the same plaintiff came before the Sixth Circuit twice.  The case began as a *qui tam*
action and retaliation claim under the FCA, *United States ex. rel. McKenzie v. BellSouth Telecomms., Inc.*, 123 F.3d
935 (6th Cir. 1997) (*McKenzie I*).  The *McKenzie I* court affirmed dismissal of the *qui tam* claim but reversed
dismissal of the retaliation claim.  After further discovery, the district court entered summary judgment for the
defendant on the retaliation claim, which the Sixth Circuit affirmed in *Mckenzie II*.

4

argues the Complaint fails to plead sufficient facts as to the first two elements of the retaliation claim.

A.

Novartis claims that Goodwin has failed to allege that she engaged in any protected activity under the FCA.  Protected activity means "acts done by the employee on behalf of the employee or others in furtherance of an [FCA] action, including investigation for, initiation of, testimony for, or assistance in an [FCA] action filed or to be filed."  *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 449 (6th Cir. 2008) (quoting 31 U.S.C. § 3730(h))).  The FCA's legislative history directs courts to broadly construe a plaintiff's protected activity, but there must be a reasonable connection between the plaintiff's actions and the FCA.  *Mckenzie II*, 219 F.3d at 515.

Novartis argues that the Complaint does not allege any false claim for payment to the government, characterizing Goodwin's internal reporting as merely raising a concern that Novartis was violating government regulations.  A plaintiff's investigation into an employer's regulatory non-compliance is insufficient to state a FCA retaliation claim, but that is not the case here.  *Blackburn v. HQM of Riverview Health Care Ctr.*, No. 3:05-CV-238-H, 2010 U.S. Dist. LEXIS 135624 at *7 (W.D. Ky. Dec. 22, 2010) (citing *United States ex rel. Yesudian v. Howard Univ.*, 153, F.3d 731, 740 (D.C. Cir. 1998)).  Starting with her initial statement to her supervisor during Sanderson's training, Goodwin repeatedly expressed concern about possible FCA violations, not just regulatory matters.

Novartis contends that Goodwin never complained of a "knowing false request for payment from the government."  However, Goodwin's reports need not be so specific to qualify

5

as protected activity.  *See Mckenzie II*, 219 F.3d at 516 (finding that employees need not know

the FCA allows *qui tam* actions or use formal words of fraud to be protected from retaliation).

The context of what Sanderson was presenting – a medical trial on an off-label[3] use of Tekturna

combined with instruction on receiving "prior authorization for Tekturna when dealing with

Humana Medicare" – made Goodwin's report of possible FCA violations sufficiently clear to

Novartis.  A drug manufacturer can be liable under the FCA for encouraging the submission of

off-label prescriptions for government reimbursement.  *See, e.g.*, *United States ex rel. Franklin v.

Parke-Davis, Div. of Warner-Lambert Co.*, 147 F. Supp. 2d 39, 51 (D. Mass. 2001) (citing

*Peterson v. Weinberger*, 508 F.2d 45, 52 (5th Cir. 1975) (holding that knowing submission of

claims for services not payable under Medicare is a FCA violation)); Stephanie Greene, *False

Claims Act Liability for Off-label Promotion of Pharmaceutical Products*, 110 Penn. St. L. Rev.

41, 43 (2005).

Defendant's argument conflates pleading requirements for asserting fraud under the FCA

and establishing protected activity.  A plaintiff must plead a FCA fraud claim with particularity

under Rule 9(b), while the lower *Twombly/Iqbal* standard under Rule 8 controls pleading of FCA

retaliation claims.  *See Kachaylo v. Brookfield Township Board of Trustees*, No. 4:10-CV-00795,

2011 WL 867585, at *5 n.1 (noting regular pleading standards applied because plaintiff brought

an FCA retaliation claim, not a *qui tam* action).  Defendant's reliance on cases dismissing FCA

fraud claims for failure to identify a particular false request for payment from the government is

misplaced.  *E.g.* Def. Mem. in Supp. Mot. to Dismiss 6 (citing *Sanderson v. HCA-The*

---

[3] The Food and Drug Administration approves drugs for particular uses, but physicians may prescribe them for uses different than those approved by the FDA ("off-label" uses).  *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341, 349-50 (2001).  However, drug manufacturers may not market a drug for off-label use.  21 U.S.C. § 331(d).

*Healthcare Co*., 447 F.3d 873, 877 (6th Cir. 2006)).  The anti-retaliation provision of the FCA protects more people than only those who can marshal enough evidence to state an FCA fraud claim.  The FCA protects activity that could reasonably lead to a viable FCA action, not only activity that supports a successful FCA action.  *Mckenzie II*, 219 F.3d at 516.

In *McKenzie I*, the Sixth Circuit held that complaining to supervisors about falsified internal records and showing them a newspaper article about a *qui tam* action in Florida with similar allegations of fraud constituted protected activity.  123 F.3d at 944.  The newspaper article was key to this holding because in *McKenzie II*, the Sixth Circuit changed course once discovery revealed the newspaper article did not mention the FCA, fraud against the federal government, or *qui tam* litigation.  213 F.3d at 515.  Without this newspaper article to demonstrate a "nexus" between her complaints and a possible *qui tam* action or fraud against the federal government, those complaints could not qualify as protected activity.  *Id*. at 517.  Furthermore, plaintiff's complaints "were directed at the stress from and pressure to falsify records, not toward an investigation into fraud."  *Id.*  In contrast, Goodwin's internal complaints were explicitly directed towards possible FCA violations.

The decision in *Smith v. C.R. Bard, Inc.*, 730 F. Supp. 2d 783 (M.D. Tenn. 2010) does not change the Court's application of Sixth Circuit law on protected activity.  Novartis contends *Smith* shows that "an employee simply does not engage in protected activity by lodging internal complaints of alleged off-label promotion, even when the employee specifically references 'false claims' and the 'False Claims Act.'"  Def. Mem. in Supp. of Mot. to Dismiss 7-8.  The Court disagrees with this characterization of *Smith*.  In fact, the opinion notes that the plaintiff's complaints about off-label promotion evidenced that he was only "concerned about possible

personal liability and was not seeking to expose any alleged fraud on the government." *Smith*, 730 F. Supp. 2d at 803. The plaintiff's reference to "a false claims act" only came later and in reference to his complaint of retaliatory conduct, not the off-label promotion. *Id.* Here, Goodwin expressed a concern that off-label promotion and submission of claims for payment to Medicare could violate the FCA. The Court's holding that Goodwin has sufficiently pleaded protected activity is consistent with the district court's decision in *Smith*.[4]

### B.

Novartis also claims that Goodwin's pleadings fail on the second prong of an FCA retaliation claim – that the employer had notice of Plaintiff's protected activity. A plaintiff meets her burden as to the notice prong of a FCA retaliation claim when she alleges activities "that would give [defendant] reason to believe that she was contemplating a qui tam action." *McKenzie I*, 123 F.3d at 944. Plaintiffs whose protected activities fall within the scope of their employment "must make clear their intentions of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations." *Yuhasz*, 341 F.3d at 568.

Nothing in the Complaint suggests that reporting possible illegal conduct was part of Goodwin's regular job duties. Her internal complaints about the Sanderson presentation

---

[4] In a similar vein, this case is distinguishable from *United States ex rel. Kennedy v. Aventis*, No. 03-C-2750, 2008 WL 4371323 (N.D. Ill. Feb. 11, 2008) and *Blackburn*, 2010 U.S. Dist. 135624. The *Kennedy* plaintiff alleged she told her employer, Aventis, "it was wrong to promote off-label" and that the company was "acting inappropriately under internal policies and FDA regulations." *Id.* at *1-2. Unlike Goodwin's complaint, there was "nothing in Kennedy's complaint suggesting that she communicated to Aventis any awareness or contention that false Medicare or Medicaid claims were being made." *Id.* at *3. Because the Court finds the facts of *Kennedy* distinguishable, it declines to address Goodwin's argument that the Sixth Circuit applies a different rule than the Seventh Circuit as to determining protected activity. *Blackburn* is distinguishable because "the factual allegations underlying [plaintiff's] retaliatory termination claim [arose] entirely from a January 2003 state survey inspection," which lacked any nexus to a subsequent federal *qui tam* action. 2010 U.S. Dist. 135624 at *6.

specifically referenced possible FCA violations, putting Novartis on notice that these complaints

could lead to a *qui tam* action.  *Compare McKenzie I*, 123 F.3d at 945 (holding that a plaintiff's

showing her supervisors a newspaper article about a *qui tam* action based on similar fraud placed

employer on notice where conduct was outside the scope of her employment) *with Yuhasz*, 341

F.3d at 567-68 (holding that a plaintiff's informing his employer that its certifications were

illegal and that other companies incurred FCA liability did not put employer on notice of

protected activity where he "was simply performing his ordinary duties as a supervisor of

laboratory testing").  Because she acted outside the scope of her employment, Goodwin's

complaints satisfy the notice element of an FCA retaliation claim.

 Novartis does not challenge the sufficiency of the Complaint as to the third prong of an

FCA retaliation claim – protected activity was the cause of the discharge or discrimination.

Thus, the Court assumes Goodwin has sufficiently pleaded that element of her claim.  The Court

finds that Goodwin's Complaint pleads enough facts as to engaging in protected activity and

notice that her FCA retaliation claim is plausible on its face.

IV.

 The second cause of action Goodwin alleges is for wrongful discharge under Kentucky

common law.  Kentucky recognizes a narrow public policy exception to the general rule that

employees are terminable-at-will.  A wrongful discharge claim must allege that the discharge

was contrary to a fundamental, well-defined public policy evidenced by a constitutional or

statutory provision.  *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985).  A discharge is so

contrary to public policy as to be actionable only when the reason for discharge was the

employee's refusal to violate the law or the "employee's exercise of a right conferred by well-

9

established legislative enactment." *Id.* at 402 (citing *Suchodolski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710, 711-12 (Mich. 1982)).

Goodwin claims she was constructively discharged for her refusal to violate the FCA, a statute she contends can support a wrongful discharge cause of action. However, "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Grzyb*, 700 S.W.2d at 401. Here, the FCA provides a civil remedy for an employee who is discharged because of her efforts to stop violations of the FCA. 31 U.S.C. § 3730(h). Since the FCA is both the source of Goodwin's proposed public policy and provides its own civil remedy for violations of that policy, it preempts a wrongful discharge cause of action. *See Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010).

Goodwin's argument that the FCA does not preempt her common law claim attempts to distinguish between the protected activity in her FCA retaliation claim and her conduct constituting a refusal to violate the FCA in her wrongful discharge claim. The distinction, superficial at best, provides little footing for her argument. Preemption occurs because the statutory and wrongful discharge claims are based on the same law, not because they rely on the same conduct. *Id.* Labeling some conduct as a refusal to violate the FCA and other conduct as protected activity under the FCA does not change that the FCA provides the public policy behind both claims. The FCA provides its own remedy for violations of its policies and thereby preempts a wrongful discharge claim. [5]

V.

---

[5] In so ruling, the Court does not address Novartis' second argument that a wrongful discharge claim must be evidenced by a Kentucky, rather than federal, statutory or constitutional provision.

10

Goodwin's third and fourth causes of action are for breach of contract and intentional infliction of emotional distress. The facts pleaded in the Complaint fail to state a claim on either count. The breach-of-contract claim fails because the oral representation Goodwin claims her supervisor made in 2007 did not create a contract as a matter of law. Goodwin alleges in her response brief that her supervisor promised continued employment so long as her performance remained adequate. Kentucky law is clear that such an agreement for permanent employment does not alter the standard at-will employment relationship. *See, e.g.*, *Clay v. Louisville & N.R. Co.*, 71 S.W.2d 617, 619 (Ky. 1934) (citations omitted). Goodwin cannot establish a breach of contract without first adequately pleading that a contract existed between her and Novartis. The claim will be dismissed.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege suffering severe emotional distress on account of defendant's intentional or reckless conduct that is "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004). Goodwin cites the following alleged conduct in support of her claim: (1) Receipt of unsigned retaliatory letters; (2) Novartis' refusal to investigate the letters; (3) Novartis employees breaching internal confidentiality policies; (4) Novartis' refusal to stop retaliatory behavior against Goodwin; and (5) Novartis' providing Goodwin with less managerial support than provided to other employees. The Court must determine at the pleading stages whether the conduct alleged "may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* at 788-89 (quoting *Restatement (Second) of Torts* § 46(1) cmt. h (1965)). Comparing the facts alleged here with the case law detailed in *Stringer*, the Court concludes the

11

allegations fall well short of being reasonably regarded as outrage.

## VI.

Goodwin's final cause of action is a claim under Ky. Rev. Stat. § 337.385 (Lexis 2010) for unpaid sums Novartis allegedly owes under the terms of Goodwin's employment with the company.  Certain types of employees are exempt from statutory wage protection, including "[a]ny individual employed . . . in the capacity of outside salesman."  Ky. Rev. Stat. § 337.010(2)(a)(2).  Kentucky regulations further define who qualifies as an "individual employed in the capacity of outside salesman."  803 Ky. Admin. Regs. 1:070.  The Court cannot conclude whether Goodwin is exempt as an "outside salesman" based solely on the Complaint and limited pleadings.  Although Plaintiff must ultimately establish her right to recover under § 337.385 as a non-exempt employee and the amounts owed, the Court concludes Plaintiff has adequately pleaded her statutory wage claim.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is SUSTAINED in part and, therefore, the Second (Wrongful Discharge), Third (Breach of Contract), and Fourth (Intentional Infliction of Emotional Distress) Causes of Action in the Complaint are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the motion is DENIED IN PART and the First (False Claims Act, 31 U.S.C. § 3730(h)) and Fifth (Ky. Rev. Stat. § 337.385) Causes of Action remain.

cc:     Counsel of Record